395 So.2d 544 (1981)
STATE of Florida, Petitioner,
v.
PALM BEACH NEWSPAPERS, INC., Respondent.
No. 58598.
Supreme Court of Florida.
March 5, 1981.
*546 Jim Smith, Atty. Gen., and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for petitioner.
Talbot D'Alemberte of Steel, Hector & Davis, Miami, and Florence Beth Snyder, West Palm Beach, for respondent.
ENGLAND, Justice.
We have agreed to review a decision of the Fourth District Court of Appeal, reported at 378 So.2d 862, which interprets our authorization for cameras in Florida's courtrooms by explicating the standards for trial judges to exercise their discretion in determining whether to exclude electronic media coverage of trial testimony. This case involves no first amendment issues regarding public access to the courts, and it in no way challenges the validity of our decision in In re Post-Newsweek Stations, Florida, Inc., 370 So.2d 764 (Fla. 1979), which in general allows electronic media coverage of Florida court proceedings.
The issues before us arose in the course of a criminal prosecution against Arthur Sakell for first degree murder. Sakell was an inmate of Glades Correctional Institute who allegedly caused the death of another inmate. Prior to trial, the state presented to the trial judge two affidavits of former prisoners of that institution, on the basis of which it requested that the court exclude television coverage of their live trial testimony. The affidavits indicated that both prisoners had been moved to Lantana Correctional Institute, but nonetheless reflected the inmates' fear of reprisal as a result of television reporting their live testimony against Sakell. Media representatives were notified of a hearing on the state's request to exclude television coverage of these witnesses' testimony, but were not furnished copies of the affidavits prior to or at the scheduled hearing.[1]
At the hearing on the state's request to exclude television coverage, no evidence was adduced by the state other than the two affidavits which had already been filed and made a part of the record of the proceeding. A prison official was available in court at the time of the hearing, apparently to testify regarding the facts of prison violence and the validity of the witnesses' fears of prison reprisal. He was never called upon to testify, however. The entire hearing consisted of a discussion between counsel and the court. The hearing resulted in a determination by the trial judge that the media should be excluded.[2]
The issues in this case focus squarely around that sentence in our Post-Newsweek decision which delegates to trial judges the authority to exclude electronic media in certain instances. The standard we adopted is:
The presiding judge may exclude electronic media coverage of a particular participant only upon a finding that such coverage will have a substantial effect *547 upon the particular individual which would be qualitatively different from the effect on members of the public in general and such effect will be qualitatively different from coverage by other types of media.
370 So.2d at 779 (emphasis added). The controversies between the state and the media in this case center around the requirement of a "finding," and the standards for its rendition.
Preliminarily, we reject the assertion that we have already ruled on the issue of excluded coverage with respect to prisoners who may testify against others in the prison system. It is true that our Post-Newsweek decision discussed a number of considerations which might allow a ban on electronic media coverage in judicial proceedings, and that one of the considerations we mentioned was the refusal of a prisoner-witness to testify for fear of reprisals from fellow inmates. Id. at 778. That discussion was not a determination that prisoner-witnesses are automatically eligible for an exclusionary ruling with respect to television and radio coverage of their testimony, however. It was merely illustrative of the type of "unique problems [which] can arise with respect to particular participants in a judicial proceeding,"[3] so as to justify our authorizing trial judges to exercise their discretion in particularized determinations.
As another preliminary matter, we reject any suggestion that a "finding" within the contemplation of our Post-Newsweek decision requires a written order which separately identifies and labels a paragraph or sentence as a "finding of fact." What is contemplated is a finding on the record, whether that be in a written order or in a transcript of the hearing. No special requirements attend this exclusionary finding which do not pertain in other areas, and certainly no additional formalities are necessary. The situation here with respect to the adequacy of "findings" is no different from that in Peterson v. State, 382 So.2d 701 (Fla. 1980), in which we permitted trial judges to recite their conclusory findings regarding the voluntariness of confessions sought to be admitted.
Our determination of a standard to be applied by a trial judge in an exclusionary proceeding is aided materially by the articulations of the members of the district court panel which considered this case. Judge Downey, writing for the panel's majority, expressed the view that an evidentiary hearing would be necessary to meet the Post-Newsweek standards, and that a "finding" such as would be required to exclude electronic media could not be predicated merely upon affidavits and a discussion between counsel and the court. Judge Letts, on the other hand, expressed in his dissent the view that the affidavits would be sufficient to predicate a "finding," just as affidavits are acceptable as a predicate for other numerous trial court rulings.[4] The lucid exposition of disparate views by Judge Downey and Judge Letts has been very helpful to set the issue here in clear perspective.
Affidavits are sufficient to ground a trial court's determination that electronic media should be prohibited from covering the testimony of a particular witness. Indeed, a ruling can be supported by matters within the judicial knowledge of the trial judge, provided they are identified on the record and counsel given an opportunity to refute or challenge them. The dangers of in-prison violence, for example, may well be a matter which can be judicially noticed, particularly in a criminal prosecution for a jail house murder. In short, the evidentiary showing which must ground an exclusionary ruling is both simple and traditional. Affidavits are adequate for this purpose, as in other types of hearings.
*548 Given that a finding is required, the question then arises whether an evidentiary hearing must in all cases be allowed either to test the veracity of non-testimonial data, such as whether an affidavit-asserted fear of reprisal is well-grounded, or to determine what less restrictive measures are available. This issue flows from our determination in Post-Newsweek that electronic media coverage of witness testimony is qualitatively different from the print media coverage which would in all events be available in trial proceedings.[5]
An evidentiary hearing should be allowed in all cases to elicit relevant facts if these points are made an issue, provided demands for time or proof do not unreasonably disrupt the main trial proceeding.[6] For example, going to the issue of less restrictive means, it might be relevant to an exclusionary ruling concerning a prisoner-witness, and a proffer of proof might be made, to show the ease or difficulty with which prison officials may curtail inmate access to particular forms of electronic media coverage.[7] We need not speculate exactly what areas or items of proof could be developed to aid the court's decision-making responsibility, but the "qualitatively different" standard of our Post-Newsweek decision should be established on the record with competent evidence whenever it is an issue and the opportunity for data-gathering is presented. Here, of course, that was not done.
Given a proper hearing, an issue still remains whether a bare assertion of fear by a prisoner will result in the automatic exclusion of the electronic media coverage of his testimony, where media representatives are not allowed by time or circumstances to test by cross-examination the prisoner's fear of reprisal. We conclude that the bare assertion of fear may, but ordinarily should not, be sufficient. The important point of the exclusionary inquiry is not whether the inmate's fear is justified. The key issue is whether the state and the defendant will be able to proceed to trial under circumstances which allow each to develop its case fully. The interest of the justice system in these proceedings is to set the procedural stage for a fair determination of the trial issues, and that interest overshadows any concern as to the reasonableness of the subjective state of mind of any individual witness. The trial judge in these peculiar exclusionary proceedings must satisfy himself that there is some adverse effect (or potential effect) on the proceeding due to the qualitative difference between electronic media coverage and other forms of trial reporting.
Stated another way, the issue in these hearings is collateral to the rights of the state and the defendant to a fair trial  rights which include the opportunity to present live witness testimony deemed by counsel to be indispensable. Where there is no competing first amendment claim, as here, the issue must of necessity be tipped in favor of exclusion, even though media representatives cannot test the foundation for affidavits by direct confrontation of the affiants. We note that in this case the state not only asserted a need for these witnesses to testify, but the witnesses declared by affidavit that they would not testify if television coverage were allowed, even under threat of contempt of court. The media's interest in covering their testimony was less important on this record than the state's need to try Sakell for the crime charged.
*549 As a next matter, we decline to adopt a precise standard of proof for exclusionary proceedings such as these, and we decline to prescribe witness requirements for any hearing which might be held. Trial judges must exercise their discretion on the basis of what is available at the time and under the circumstances.[8] Mini-trials which disrupt the timing, procedures or sequence of the main trial are to be avoided at all costs. Yet we do not give trial judges carte blanche authority. Trial judges can, obviously, abuse their discretion in a variety of ways, such as foreclosing a meaningful presentation of evidence, defeating adequate notice requirements, or acting wholly without record support which is readily available. In the final analysis, though, when the rules of the game are obeyed and a fair exchange of views obtained, it remains more important that a trial go forward with the testimony of witnesses than that the media be permitted to cover their testimony, even conceding that witnesses' names may appear in the written media and that the indicted defendant will himself, from his position in the courtroom, see these witnesses testify.
The premise of our Post-Newsweek decision, translated into the context of this case, is that there may well be a qualitative difference between the display of inmate-witnesses' images on television sets in the halls of their prison home, on the one hand, and either a word-of-mouth campaign spread by the indicted defendant when he returns to jail to the effect that two of his former jail colleagues "finked," or written reports of their testimony carried in local newspapers, on the other. The media here recognizes that qualitative difference, but asks us to emphasize that only that type of difference may be the basis for an exclusionary ruling against the electronic media. We restate, because the media is correct, that this difference alone is the focus of the hearing.[9]
We also reiterate, however, that it remains essential for trial judges to err on the side of fair trial rights for both the state and the defense. The electronic media's presence in Florida's courtrooms is desirable, but it is not indispensable. The presence of witnesses is indispensable. That difference should always affect but never control a trial judge in his approach to the exercise of his discretion in excluding electronic media coverage of a prisoner-witness, or for that matter, any witness.
For the foregoing reasons, we must disagree with the majority decision of the district court below and adopt the standards for evidentiary exclusionary proceedings with respect to electronic media expressed above. Were we to apply these standards to the order of the trial court in this case, we would conclude that the trial judge improperly excluded electronic media coverage of these prisoner-witnesses. First, the notice of hearing to media representatives was fundamentally inadequate. Second, given the denial of copies of the affidavits to media representatives and the ready availability of a prison official to speak concerning prison conditions or the means *550 by which inmate access to particular forms of electronic media coverage might have been curtailed, the hearing itself was defective. Nonetheless, the trial of Sakell has been concluded so that no remand for further proceedings is necessary.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
ADKINS, J., concurs in result only.
NOTES
[1] We agree completely with the district court that the trial judge erred in refusing to disclose the affidavits to the electronic media for purposes of the exclusionary hearing. The state now concedes that the denial of access to those materials was an error. Were the matter still relevant we would reverse the action of the trial judge on that basis alone, for notice of a hearing without an opportunity to see the documentary basis for the state's motion would be, in essence, no notice at all. Cf. State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1976) (news media have special concerns entitling them to notice and at least a summary hearing before any trial court enjoins or limits publication of court proceedings).
[2] The judge apparently also ruled that sketch artists would be excluded from the courtroom, although the record is not clear that a formal ruling was made. There was plainly no basis for an exclusion of sketch artists in this case. See United States v. Columbia Broadcasting Sys., Inc., 497 F.2d 102 (5th Cir.1974). The alleged ruling makes no difference in this proceeding as it now stands, however, inasmuch as the trial of Sakell has gone forward and resulted in his acquittal.
[3] In re Post-Newsweek Stations, Florida, Inc., 370 So.2d 764, 778 (Fla. 1979).
[4] Examples of proceedings which can be determined by affidavits alone are summary judgment hearings (Fla.R.Civ.P. 1.510(a)), temporary injunction hearings (Fla.R.Civ.P. 1.610(b)), nonadversary probable cause hearings (Fla.R. Crim.P. 3.131(a)(3)) and motions for a new trial (Fla.R.Crim.P. 3.600(c)).
[5] This case in no way involves a prior restraint on what the media may publish, such as we dealt with in State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1976).
[6] Media counsel suggests that many of the problems concerning electronic coverage would be eliminated if there were better pre-hearing communication between opposing counsel, and if these sensitive matters were not "dumped" on the trial judge without a clear presentation of the reasons underlying the parties' respective positions. We, too, would urge improved communication between counsel to aid the courts' decision-making capabilities.
[7] For instance, evidence may be presented by the media to compare prisoner access to newspapers, television and radio broadcasts, and to explain institutional mechanisms or practices for the control of each.
[8] Canon 3A(7) of the Florida Code of Judicial Conduct, which constitutes a general authorization for electronic media and still photography trial coverage, provides:

Subject at all times to the authority of the presiding judge to (i) control the conduct of proceedings before the court, (ii) ensure decorum and prevent distractions, and (iii) ensure the fair administration of justice in the pending cause, electronic media and still photography coverage of public judicial proceedings in the appellate and trial courts of this state shall be allowed in accordance with standards of conduct and technology promulgated by the Supreme Court of Florida.
(emphasis added). In addition, the procedural suggestions expressed by Justice Sundberg in State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904, 912 (Fla. 1976) (Sundberg, J., concurring), are relevant here and would eliminate many of the potential problems.
[9] As media counsel aptly put the matter at the television exclusion hearing:

[Y]ou show us where it's going to make any more difference if we're photographing you than it someone on the radio speaks about you and mentions your name or if they take a picture with a still camera or any other means that the media uses when you speak about the rights of the public to know.