395 So.2d 532 (1981)
STATE of Florida, Petitioner,
v.
Adelita Quejado GREEN, Respondent.
No. 57398.
Supreme Court of Florida.
March 5, 1981.
*534 Jim Smith, Atty. Gen., and James H. Greason, Asst. Atty. Gen., Miami, for petitioner.
Roy E. Black, Miami, for respondent.
Talbot D'Alemberte and Donald M. Middlebrooks, of Steel, Hector & Davis, Miami, *535 for Post-Newsweek Stations, Florida, Inc., amicus curiae.
OVERTON, Justice.
This is a petition for writ of certiorari from a decision of the Third District Court of Appeal, reported at 377 So.2d 193 (Fla.3d DCA 1979), in which it certified to this Court the following question to be of great public interest:
Whether a trial court is constitutionally required [under the due process clause of the Fourteenth Amendment to the United States Constitution and article I, section 9, of the Florida Constitution] to prohibit electronic media coverage of court proceedings in a criminal case upon a demonstration that such coverage would render an otherwise competent defendant incompetent to stand trial?
We have jurisdiction.[1] Applying the facts of the instant case to the certified question, we approve the affirmative answer of the district court and hold that a trial court's evidentiary finding that actual in-court electronic coverage would render an otherwise competent defendant incompetent to stand trial meets the requirements of the "qualitatively different" test set forth in In re Post-Newsweek Stations, Florida, Inc., 370 So.2d 764 (Fla. 1979).[2] This answer is also mandated by the principles expressed by the United States Supreme Court in Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). See Lane v. State, 388 So.2d 1022 (Fla. 1980).
The district court reversed and remanded the cause for a new trial based on three trial court errors: (1) the trial court's failure to require a pretrial evidentiary hearing on respondent's motion to exclude electronic media; (2) the trial court's failure to enforce respondent's subpoena duces tecum; and (3) the trial court's exclusion of two of respondent's impeachment witnesses.
We approve the district court decision and find points two and three were properly decided, do not concern the certified question, and necessitate no further discussion.
The relevant facts concerning the first issue, which is the basis of the certified question, are as follows. Respondent, an attorney, was charged with grand larceny for allegedly misappropriating client funds. After three court-appointed psychiatrists found respondent incompetent to stand trial, the trial court postponed the proceedings. Several months later, respondent was reexamined by the same three psychiatrists and found to be competent to stand trial, although each agreed that she continued to be mentally disturbed. After an evidentiary hearing on the issue, the trial judge found that respondent was indeed competent for trial and set a trial date.
Defense counsel thereafter moved for the exclusion of electronic media from the trial, asserting as grounds the history of respondent's mental illness and, by affidavit, set forth the opinion of one of the court-appointed psychiatrists who allegedly had concluded:
[A]ppearance of the electronic media in this case would adversely affect the defendant. Her anxiety and depression will be heightened and actively interfere with her ability to defend herself and to communicate with counsel.
Defense counsel further stated:
That based upon his extensive contact with the defendant over a ten month period he has concluded that extensive media coverage of the trial will severely lessen defendant's ability to properly defend herself. Up to a month ago this defendant was unable to actively assist in the preparation of her defense: she was totally apathetic, had no interest in discussing the details of the transactions involved, and continually expressed extreme depression concerning the future. *536 Her condition is still very fragile; articles in newspapers, radio and television affect her greatly. The intrusion of cameras into the courtroom would paralyze her with apprehension and consequently prevent her from defending herself.
The motion also included the report of respondent's treating psychiatrist who had concluded that the presence of electronic media in the courtroom would adversely impact respondent's competency to stand trial. The trial court heard argument on the merits of the motion but refused to take any testimony on the issues presented. The motion was denied.
On appeal, the Third District Court correctly rejected respondent's contention that she had an absolute constitutional right at her option to exclude electronic media coverage of the judicial proceedings, Chandler v. Florida, ___ U.S. ___, 101 S.Ct. 802, 66 L.Ed.2d 740, 99 U.S.L.W. 4141 (1981); Post-Newsweek; but found that respondent's motion to exclude electronic media alleged probable prejudice violative of constitutional due process standards sufficient to require an evidentiary hearing on the matter. The district court expressly found from the record:
Although the trial court adjudged the defendant competent to stand trial, no determination or inquiry was ever made by the trial court as to whether such competency would exist in the event the trial were televised... . [I]t was incumbent upon the trial court to conduct a full evidentiary hearing thereon which, at a minimum, should have included testimony or reports by the court-appointed psychiatrists as to the impact which electronic media coverage of this trial would have on the defendant's competency to stand trial.
377 So.2d at 200-01. The district court concluded that the trial court committed reversible error in refusing to provide an evidentiary hearing on this issue.
The issue in the instant case sharpens the focus on the discretionary authority given the trial judge to restrict electronic coverage as it applies to criminal defendants and other trial participants generally. We established the test for the trial judge to apply in Post-Newsweek:
The presiding judge may exclude electronic media coverage of a particular participant only upon a finding that such coverage will have a substantial effect upon the particular individual which would be qualitatively different from the effect on members of the public in general and such effect will be qualitatively different from coverage by other types of media.
Id. at 779. This "qualitatively different" test gives the trial judge definitive guidelines by which he is allowed to exclude electronic media from court proceedings. We note that the trial judges' discretionary authority in this regard is analogous to the authority trial judges have traditionally applied in cases where special injury and special damages arise resulting from public disclosure of confidential informants, trade secrets, and details of child custody proceedings.
The instant test emphasizes that any general effect resulting from public notoriety of the case will not suffice to trigger electronic media exclusion. We realize that courtrooms are intimidating and that apprehension accompanies most individuals who must participate in a court proceeding. This, however, is not a product of electronic media's presence. Courtrooms were intimidating long before the advent of electronic media. Trials with considerable public interest have always resulted in courtrooms full of spectators, news reporters, and sketch artists, all of whom add to the intimidation of the courtroom atmosphere. In our view, the single addition of the camera in the courtroom in these circumstances should not increase tension significantly, given the fact that electronic media will report the proceedings whether or not its camera is actually in the courtroom.
Wider dissemination of information concerning judicial proceedings is not a reason to exclude the camera from the courtroom. Local knowledge of the proceedings *537 will be no greater proportionately with electronic media than when this country was primarily agrarian and commonplace court attendance resulted in widespread knowledge of courtroom proceedings. As our society has become more complex and urbanized, more citizens have become dependent on the media for courtroom knowledge rather than actual observation. The camera's physical presence in the courtroom once again allows, to a limited extent, personal observation of the judicial process.
We determined in our Post-Newsweek decision that the presence of electronic media in and of itself was not prejudicial. In fact, answers to a questionnaire submitted to witnesses, jurors, and court personnel reflected that there was almost no difference in concern about the dissemination and publication of their trial participation by the print media as compared to its dissemination by the electronic media.[3] We concluded that under these circumstances, citizens should not be denied this additional means to see their government in operation absent a truly overriding interest.
In Post-Newsweek we recognized certain examples which might meet the qualitatively different test: (a) witnesses who are undercover officers or confidential informants; (b) witnesses who, because of their prior testimony, have new identities; (c) witnesses who are presently incarcerated and have real fears of reprisal upon return to prison environment; (d) rape victims; and (e) child custody proceedings. These examples were not intended to be all-inclusive. *538 The trial court's discretion in applying the qualitatively different test controls. In his remarks addressing television coverage of trials, Journalism Professor Fred W. Friendly recognized the need for this discretionary authority by stating: "But not even the most zealous advocates suggest coverage of all trials in all courts. I doubt that any serious journalist would wish to invade the privacy of rape victims or most juveniles." Friendly, On Judging the Judges, in State Courts: A Blueprint for the Future, 70, 75 (T. Fetter ed. 1978).
The procedural process which necessarily follows from the trial judge's discretionary authority in applying the qualitatively different test requires an expeditious hearing in all cases where proper motions to exclude the electronic media are presented. A proper motion should set forth facts that, if proven, would justify the entry of a restrictive order. General assertions or allegations are insufficient. The trial court must allow the affected media to participate in the hearing although all parties must recognize that these proceedings are collateral and, as such, should not unnecessarily delay the main proceeding, particularly in criminal matters where the right to speedy trial may be adversely affected.
It should be recognized that the qualitatively different test has constitutional dimensions when applied to a criminal defendant because the constitutional right to fair trial is at issue. Given this factor, a different quantum of proof applies to a criminal defendant as compared to all other trial participants. The general trial participant must clearly show some special and identifiable injury from the presence of the camera and electronic media under the test. However, the criminal defendant has a two-fold opportunity to either show that there is a reasonable and substantial likelihood that an identifiable prejudice to the right of fair trial will result from the presence of electronic media under the test or the same special or identifiable injury as other trial participants. In all instances, a showing must be made that the prejudice or the special injury resulted solely from the presence of electronic media in the courtroom in a manner which is qualitatively different from that caused by traditional media coverage.
In the instant case, this criminal defendant's right to fair trial was at issue because defense counsel had properly raised respondent's competency to stand trial as well as asserting that respondent met the qualitatively different test. Competency is an extremely sensitive area of the criminal law which the United States Supreme Court and this Court have discussed at length. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Lane v. State, 388 So.2d 1022 (Fla. 1980). The United States Supreme Court and this Court have made it clear that the trial judge has the responsibility of conducting an evidentiary hearing on a defendant's competency to stand trial whenever any reasonable indication of incompetency arises, whether or not trial counsel requests such a hearing. Under the facts of this cause, respondent had previously been found incompetent to stand trial. Treatment subsequently rendered her competent to proceed with the cause. The motion to exclude electronic media asserted under oath that defense counsel would produce psychiatric testimony at an evidentiary hearing which would establish that the presence of electronic media would adversely affect respondent's ability to communicate with her counsel and cause her to lapse back into psychosis. Under these facts, the trial judge was required by Drope and Lane to have an evidentiary hearing on the competency issue, which by the circumstances would also allow an application of the qualitatively different test.
The procedure determining whether the qualitatively different test applies, while requiring a hearing, may not necessarily require an evidentiary one. In our opinion, the trial court in many instances could have a hearing and make a decision on the basis of affidavits after all parties have had an opportunity to be heard. In the instant case, however, the competency issue mandated an evidentiary hearing. The trial judge erred in not allowing one.
*539 One further matter should be mentioned. By establishing the standards for camera placement in the courtroom in Post-Newsweek, we contemplated that the chief judges of each circuit would place the cameras in locations which would allow coverage but at the same time not interfere or disrupt the conduct of the trial. Cameras should not be situated so that they interfere with the proceeding or with any of the trial participants or their activities, especially defense counsel-defendant conferences in criminal trials. In some instances, small courtrooms may not be suitable for camera coverage. This may require the chief judge to reschedule the proceeding in a larger available courtroom to ensure electronic media's noninterference. We have been impressed with the responsibility of the media, the trial judiciary, and the legal profession in providing electronic media trial coverage to the public without disruption of the proceedings. We hope that they will continue to reasonably and responsibly address the unique problems which arise by reason of electronic media coverage.
In conclusion, we note that in a free democratic society openness has historically been necessary for judicial credibility. The presumption of openness in our courts is basic and essential to assure free citizens that no inside or outside manipulations influence the judicial process. The United States Supreme Court recognized this factor in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973 (1980), in which Chief Justice Burger stated: "From this unbroken, uncontradicted history, supported by reasons as valid today as in centuries past, we are bound to conclude that a presumption of openness inures in the very nature of a criminal trial under our system of justice."
The certified question is answered in the affirmative. We approve the excellent opinion of Judge Hubbart applying our decision in Post-Newsweek to the instant facts and also approve the disposition of the other issues in the cause. The guidelines expressed in this opinion should assist in proper and justifiable use of electronic media in the courtroom. Accordingly, we remand this cause to the trial court for a new trial.
It is so ordered.
SUNDBERG, C.J., and BOYD, ALDERMAN and McDONALD, JJ., concur.
ADKINS, J., concurs in result only.
ENGLAND, J., did not participate in the consideration of this case.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const. (1972).
[2] In Post-Newsweek, we held that electronic media courtroom coverage did not per se violate due process standards under the United States Constitution. That holding has recently been approved. Chandler v. Florida, ___ U.S. ___, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981).
[3] The following questions and responses are excerpted from the Court's trial participant survey conducted after the pilot program initially allowing electronic media access to Florida courts. See Post-Newsweek, 370 So.2d at 767.

27. To what extent did knowing that the proceedings may be televised affect your desire to participate in the trial?

Juror
1. Not at all 86.1%
2. Slightly 5.9%
3. Moderately 2.8%
4. Very 2.8%
5. Extremely 2.4%
average response 1.3
Witness
1. Not at all 73.2%
2. Slightly 10.4%
3. Moderately 4.6%
4. Very 5.7%
5. Extremely 6.2%
average response 1.63
Court Personnel
1. Not at all 80.4%
2. Slightly 9.3%
3. Moderately 6.5%
4. Very 1.9%
5. Extremely 1.9%
average response 1.35
Attorney
1. Not at all 56.5%
2. Slightly 20.4%
3. Moderately 15.6%
4. Very 4.1%
5. Extremely 3.4%
average response 1.74

30. To what extent did knowing that the proceedings may receive newspaper coverage affect your desire to participate in the trial?

Juror
1. Not at all 87.6%
2. Slightly 6.2%
3. Moderately 4.5%
4. Very.2%
5. Extremely 1.4%
average response 1.2
Witness
1. Not at all 78.3%
2. Slightly 8.4%
3. Moderately 5.7%
4. Very 3.2%
5. Extremely 4.4%
average response 1.5
Court Personnel
1. Not at all 86.1%
2. Slightly 6.5%
3. Moderately 4.6%
4. Very 1.9%
5. Extremely.9%
average response 1.2
Attorney
1. Not at all 65.3%
2. Slightly 15.3%
3. Moderately 13.3%
4. Very 3.3%
5. Extremely 2.7%
average response 1.6