410 So.2d 552 (1982)
Joseph CARTER, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-1862.
District Court of Appeal of Florida, Third District.
February 9, 1982.
Rehearing Denied March 15, 1982.
*553 Bennett H. Brummer, Public Defender and Paul Morris, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Calvin L. Fox and Leonard L. Elias, Asst. Attys. Gen., for appellee.
Before HUBBART, C.J., and BASKIN and FERGUSON, JJ.
BASKIN, Judge.
Defendant Joseph Carter appeals burglary and sexual battery convictions for which he received sentences of 15 years and 137 years imprisonment. He presents as issues the trial court's refusal to enforce a witness subpoena and the court's denial of his request to admit into evidence the deposition of an absent witness. We affirm.
Ninety-two-year-old Betty Porath accused Joseph Carter, age sixteen, of entering her home through the kitchen door and sexually assaulting her. Afterward he demanded money but left her home when she told him that she had none. When police arrived, she described her assailant as a black man, a little taller than she, of medium build, wearing a dark brown sweater and white undershirt. As she was led to an ambulance, she pointed to Joseph Carter, who was standing forty or fifty feet away in the crowd, and identified him as her assailant. She stated that she had based her initial identification on his clothing but had recognized his face when he came closer to her. During her testimony at trial, she indicated that she did not see her assailant in the courtroom, but when he was brought closer to her, she recognized him as the man who had attacked her.
Ms. Porath testified that she needed glasses only for reading or sewing. Defense counsel indicated to the court that he wished to call Ms. Porath's doctor as a witness but that the doctor had refused to come to court. Upon the court's denial of a writ of bodily attachment, defense counsel proffered that the doctor would testify that he had recommended glasses for her vision.
While we strongly disapprove of the trial court's refusal to enforce the witness subpoena served upon the doctor and reiterate that a defendant's constitutional right to present material, relevant, admissible evidence may not be thwarted by a trial court, Green v. State, 377 So.2d 193 (Fla. 3d DCA 1979), cert. granted on other grounds, 395 So.2d 532 (Fla. 1981); see also Krantz v. State, 405 So.2d 211 (Fla. 3d DCA 1981), under the circumstances of this case, we hold that a new trial is not required. An *554 examination of the other evidence presented to the jury compels our conclusion that overwhelming evidence supports defendant Carter's conviction.
Joseph Carter and his victim struggled face-to-face for approximately fifteen minutes. Ms. Porath identified Carter shortly after the incident when she observed him wearing a white T-shirt with a brown stain similar to the one her attacker had worn. She also identified Carter in the courtroom. Defendant Carter's underwear contained human blood, although he testified he had not been bleeding. Caucasian pubic hair, with characteristics similar to the victim's hair, was found on his underwear, and Carter's thumb print was recovered from the victim's doorknob as well as near a latch at the top of her door. Hairs similar to those of Ms. Porath's dog were found on defendant Carter's sweater. Defense counsel's proffer that the doctor would have testified that he had merely "recommended" glasses for Ms. Porath without actually prescribing them is insufficient to mandate a new trial in light of the overwhelming evidence against Carter. In our opinion, the constitutional error committed by the court in refusing to enforce its subpoena was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Jones v. State, 332 So.2d 615 (Fla. 1976); accord, Harrell v. State, 405 So.2d 480 (Fla. 3d DCA 1981).
Next, defendant maintains the court erred in refusing to admit the prosecutor's deposition of Debbie Kemp when she could not be located in time to secure her attendance at trial. He advised the court:
They served the mother at home from the Sheriff's Office and they found out about this yesterday. They have tried to locate her. Her mother doesn't know where she's living at this time and I just would like permission from the Court to read the deposition.
The record indicates that defense counsel's efforts to obtain the witness occurred the day before trial. This case is distinguishable from the situation in State v. Barnes, 280 So.2d 46 (Fla. 2d DCA), cert. denied, 285 So.2d 25 (Fla. 1973), in which the court permitted the use of a deposition "where the state has the right to cross-examine" if the witness is "unavailable for good cause or has died." In the case before us, there is no evidence the witness had died or was unavailable for good cause. Her absence appears to have been attributable to the lack of service of process. Although defense counsel argues that her testimony would have corroborated defendant's testimony that he was not at the Porath residence at the time of the assault, her testimony was not proffered or appended to the record. It is therefore impossible for us to determine what effect, if any, the excluded evidence might have had. See Mitchell v. State, 321 So.2d 108 (Fla. 1st DCA 1975), cert. dismissed, 345 So.2d 425 (Fla. 1977); Powers v. State, 224 So.2d 411 (Fla. 3d DCA), cert. denied without opinion, 232 So.2d 180 (Fla. 1969). Other witnesses testified that defendant was with Debbie Kemp at approximately 7:30 p.m., the hour of the alleged offense.
Finding no reversible error, we affirm the convictions and sentences.