573 So.2d 87 (1991)
Marshall Lee GORE, Appellant,
v.
The STATE of Florida, Appellee.
No. 89-990.
District Court of Appeal of Florida, Third District.
January 2, 1991.
Rehearing Denied January 31, 1991.
*88 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard L. Polin, Asst. Atty. Gen., for appellee.
Before JORGENSON, LEVY and GODERICH, JJ.
JORGENSON, Judge.
The principal issue presented by this appeal is whether the trial court abused its discretion by refusing to exclude the electronic media from the courtroom after defendant Marshall Lee Gore had presented medical evidence that the media's presence would adversely affect his ability to testify. We conclude that the trial court did not abuse its discretion in denying Gore's motion to exclude the electronic media and affirm his convictions for attempted murder, kidnapping, sexual battery, burglary, robbery, and theft.
Gore's motion to exclude the electronic media was made after the state had completed presenting its case, thirteen days into the trial. Defense counsel argued that, based upon a psychological evaluation made some months earlier, Gore would not be able to participate effectively in the trial or assist in his defense if the electronic media was present. The psychologist who examined Gore had concluded that Gore suffered from Attention Deficit Disorder and a severe personality disorder that would cause him to want to perform before the cameras, and that the presence of the television cameras would distract him. The trial court conducted an evidentiary hearing at which the examining psychologist was questioned by defense counsel, the state, and the court. In response to a question posed by the court, the psychologist admitted that he could not tell when Gore was lying and when he was telling the truth. Following the evidentiary hearing, the court found Gore competent to testify and denied the motion to exclude the electronic media.
Gore took the stand. When he complained that he was "not going to be able to do this," the court ordered the television camera repositioned so that it was out of Gore's view and would not be able to focus on the defense table. The court then appointed a team of three doctors to examine Gore to determine whether the presence of the television cameras was, in fact, affecting Gore's ability to participate in his trial.
On the next day, the three doctors testified. The first psychiatrist testified that Gore did not suffer from any major illness, was manipulative, and was simply "making an issue" of the presence of the camera. In his opinion, Gore was lying when he said that he would not be able to testify if a camera was present. The second doctor, a psychologist, testified that although Gore suffered from some social disorders the mere presence of the camera in the courtroom would not interfere with his ability to assist his counsel and would not affect his competency. The third doctor, a psychiatrist, testified that he found no evidence that Gore suffered from Attention Deficit Disorder or hyperactivity. He diagnosed Gore as suffering from a severe personality disorder and concluded that the camera's presence would affect Gore's testimony. However, the doctor could not conclusively determine whether Gore could answer questions posed to him before the cameras, if he so desired. The trial court then denied the defense motion to exclude the electronic media during defendant's testimony.
Gore resumed testifying but, after a short while, refused to answer any more questions, saying that he could not continue. The court directed Gore to submit to cross-examination. When the state asked Gore whether he had been convicted of any *89 felonies, Gore answered, "Yes." The state asked, "How many?"; Gore stated that he did not know. The state then asked Gore if he had been convicted of any crimes involving lying; Gore answered, "Yeah." The state then introduced, over objection, certified copies of all of Gore's prior convictions, the charging documents, and the arrest forms for those convictions.
Following the jury's verdicts of guilt and the court's entry of judgments of conviction and sentencing, Gore appealed.
We hold that the trial court acted within its discretion in finding that the presence of the electronic media did not render Gore incompetent to testify.[1] Although the presence of electronic media in the courtroom does not constitute a per se denial of due process, Chandler v. Florida, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981), a trial court is "constitutionally required to prohibit electronic media coverage of court proceedings in a criminal case upon a demonstration that such coverage would render an otherwise competent defendant incompetent to stand trial." State v. Green, 395 So.2d 532, 535 (Fla. 1981). Upon a finding that "such coverage will have a substantial effect upon the particular individual which would be qualitatively different from the effect on members of the public in general and such effect will be qualitatively different from coverage by other types of media," the court may exclude the media. In re Post-Newsweek Stations, Florida, Inc., 370 So.2d 764, 779 (Fla. 1979). The "finding" required by Post-Newsweek must be on the record, either in writing or orally, in a transcript of the hearing. State v. Palm Beach Newspapers, Inc., 395 So.2d 544, 547 (Fla. 1981). Moreover, "[a]n evidentiary hearing should be allowed in all cases to elicit relevant facts if these points are made an issue, provided demands for time or proof do not unreasonably disrupt the main trial proceeding." Id. at 548. The exclusion of the electronic media is a matter that rests within the sound discretion of the trial court judge. State v. Green, 395 So.2d at 536; State v. Palm Beach Newspapers, 395 So.2d at 549.
On two separate occasions, the trial court complied with all of the requirements established by Post-Newsweek, Green, and Palm Beach Newspapers. Nevertheless, Gore argues that whenever a defendant presents competent substantial evidence that the presence of the electronic media will adversely affect his ability to testify, the electronic media must be excluded. That argument flies in the face of reason and a long line of cases which hold that where medical experts' reports conflict, a trial court has not abused its discretion in finding a defendant competent to stand trial. See, e.g., Ferguson v. State, 417 So.2d 631 (Fla. 1982); Fowler v. State, 255 So.2d 513 (Fla. 1971); Holmes v. State, 494 So.2d 230 (Fla. 3d DCA 1986). The trial court employed every possible precaution to ensure that Gore's constitutional rights were protected, both before Gore began testifying and after he had taken the stand. The court exhibited commendable patience, especially because the state had completed its case before Gore even raised the issue of the presence of the electronic media.[2]
No case law in this or any other jurisdiction supports the argument that the trial court loses its broad discretion to determine *90 competency once a defendant presents one psychologist's testimony that the presence of the electronic media would interfere with the defendant's ability to testify. No single expert's opinion should ever be deemed binding on a trial court and preclude the court's consideration of the weight and credibility of other, perhaps conflicting, expert opinions. Accordingly, we hold that the trial court did not abuse its discretion in denying Gore's motion to exclude the electronic media during his testimony.
Next, Gore argues that the trial court erred in allowing the state to introduce certified copies of Gore's prior convictions, the charging documents, and the arrest forms relating to those convictions. We agree that the court committed error. Once Gore admitted that he had been convicted of prior crimes, including crimes involving dishonesty or false statement, the state could go no further. See Jackson v. State, 498 So.2d 906 (Fla. 1986); Williams v. State, 511 So.2d 1017 (Fla. 2d DCA), rev. denied, 519 So.2d 988 (Fla. 1987); Johnson v. State, 361 So.2d 767 (Fla. 3d DCA 1978), cert. denied, 382 So.2d 693 (Fla. 1980). However, such error is subject to a harmless error analysis. Blasco v. State, 419 So.2d 807 (Fla. 3d DCA 1982). In light of the overwhelming evidence against Gore, we hold that the erroneous admission of the prior convictions and the underlying documents was harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
However, we reverse Gore's conviction for the attempted murder of the victim's child. Because the overt acts comprising the crime charged were committed in Georgia, not in Florida, the court did not have territorial jurisdiction over the crime charged. Section 910.005, Florida Statutes (1987); Lane v. State, 388 So.2d 1022 (Fla. 1980). The trial court therefore erred in denying Gore's motion for judgment of acquittal as to that charge.
We also reverse Gore's conviction for possession of a weapon during the course of a criminal offense. Hall v. State, 517 So.2d 678 (Fla. 1988); Carawan v. State, 515 So.2d 161 (Fla. 1987).
As to defendant's remaining points on appeal, we find no merit.
Reversed in part; affirmed in part; remanded.
NOTES
[1] Both in the trial court and before this court, Gore attempted to avoid characterizing the issue of his alleged inability to testify before the camera as one of competency. However, we can discern no meaningful difference between Gore's claim and that of the defendant in State v. Green, 395 So.2d 532 (Fla. 1981). In Green, the defendant sought to exclude the electronic media because, in the opinion of a psychiatrist, the presence of the media would heighten the defendant's anxiety and depression and interfere with her ability to defend herself and communicate with counsel. 395 So.2d at 535. The supreme court characterized the issue as one of competency to testify. Id. at 538. Likewise, Gore's claim that the presence of the camera would interfere with his ability to testify raised the issue of his competency to stand trial. See also Fla.R.Crim.P. 3.211(a)(2)(vi) (defendant's capacity to testify relevantly one factor to consider when determining competency to stand trial).
[2] Defense counsel had in its possession the medical report that formed the basis of the motion months before actually moving to exclude the electronic media.