THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.*
DONALD LANG, Respondent-Appellant.

First District (2nd Division)  Nos. 82—429, 82—2302, 83—2218, 84—1238,
84—1341 cons.

Opinion filed September 4, 1984.

James J. Doherty, Public Defender, of Chicago (Marilyn Martin, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Henry A. Hauser, Mark R. Davis, and Jude Wiener, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DOWNING delivered the opinion of the court:

Nearly two decades have passed, yet the interesting as well as perplexing case of respondent Donald Lang, a visually impaired,[1] illiterate deaf-mute, endures—stubbornly evading efforts of finality on the part of the Illinois judiciary.

In November 1965, respondent was indicted for the murder of a woman. (Ill. Rev. Stat. 1965, ch. 38, par. 9—1.) He was civilly committed to the Department of Mental Health after being found unfit to stand trial. (*People v. Lang* (1967), 37 Ill. 2d 75, 80-81, 224 N.E.2d 838.) On appeal from the circuit court's denial of respondent's petition for a writ of *habeas corpus*, the supreme court ordered the cause reinstated and expedited for trial. (*People ex rel. Myers v. Briggs* (1970), 46 Ill. 2d 281, 288, 263 N.E.2d 109.) The State, however, dismissed the indictment due to the death of a principal witness. Respondent was thereupon released from confinement in February 1971.

Approximately five months later, in July 1971, respondent was again indicted for the murder of a second woman. (Ill. Rev. Stat. 1969, ch. 38, par. 9—1.) Following a jury trial, he was found guilty as charged, convicted and sentenced to a term of 14 to 20 years' imprisonment. This court reversed in February 1975, holding that respondent's conviction had been secured in the absence of trial procedures which could effectively compensate for his disabilities; accordingly, the cause was remanded for a determination of respondent's fitness to stand trial. *People v. Lang* (1975), 26 Ill. App. 3d 648, 655, 325 N.E.2d 305, *appeal dismissed* (1976), 423 U.S. 1070, 47 L. Ed. 2d 80, 96 S. Ct. 851, *cert. denied* (1976), 423 U.S. 1079, 47 L. Ed. 2d 90, 96 S. Ct. 866.

After a March 1976 fitness hearing, the trial court found respondent unfit and remanded him to the Illinois Department of Mental

---

[1]According to the record, respondent is now legally blind in his left eye and suffers restricted vision in his right eye.

Health and Developmental Disabilities (Department) for a hearing into his need for hospitalization. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2.) The lower court, in December 1976, ruled that respondent was not mentally retarded, that he was not in need of mental treatment and that, pending further order of court, he was to continue his residency at the security unit of the Illinois State Psychiatric Institute (ISPI), a Department facility.

In March 1977, the circuit court vacated its order requiring the Department to hold respondent. Pursuant to the conservator's application for voluntary or informal admission, respondent remained at ISPI until October 1977, at which time the court allowed the Department to discharge him to the Cook County jail. However, it was also the trial court's directive, by virtue of a writ of *mandamus*, that the Department create and implement an adequate and humane care and treatment program. This court vacated the *mandamus* order, but affirmed the denial of respondent's petition for a writ of *habeas corpus*. *People v. Lang* (1978), 62 Ill. App. 3d 688, 712, 378 N.E.2d 1106, *rev'd on other grounds* (1979), 76 Ill. 2d 311.

On appeal, the supreme court remanded the cause to the circuit court for a hearing to determine whether respondent was still unfit to stand trial and, if so, whether respondent possessed the characteristics of dangerousness required for involuntary admission under sections 1—119 and 3—700 *et seq.* of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat., 1978 Supp., ch. 91½, pars. 1—119 and 3—700 *et seq.*) (hereinafter referred to by section number as the MHDD Code). *People v. Lang* (1979), 76 Ill. 2d 311, 331, 391 N.E.2d 350, *cert. denied* (1979), 444 U.S. 954, 62 L. Ed. 2d 326, 100 S. Ct. 433.

On March 23, 1981, the trial court entered an order finding respondent to be unfit to stand trial or to otherwise plead to the 1971 murder charge then pending against him. (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—16(d).) It was further found that no substantial probability existed that respondent would attain fitness within one year. A commitment hearing was thereupon held in May 1981. Testimony was heard from five psychologists, three psychiatrists, one social worker, respondent's brother, and civilian workers as well as correctional officers employed by the Cook County Department of Corrections. At the conclusion of this hearing, respondent moved for a directed finding that his basic condition was that of an organic physical illness and, as a result thereof, he was developmentally disabled and not subject to involuntary commitment. This motion was denied.

On August 28, 1981, the circuit court entered an order finding

that respondent met the criteria for involuntary admission[2] into a mental health facility designated by the Department. It was further ordered that the 1971 murder charge against respondent be dismissed with leave to reinstate. In accordance with the statutory periodic review provision (section 3—813 of the MHDD Code (1979)), the trial court has subsequently made six redeterminations of respondent's status as a person subject to involuntary commitment. On April 25, 1984, following the sixth redetermination, respondent filed a petition for a formal hearing into his fitness to stand trial for the 1971 murder charge. This petition was denied on May 17, 1984.

The present appeals, which have been consolidated in the interest of expediting a final disposition of this protracted matter, question the constitutionality of the term "mental illness" as used in section 1—119 of the MHDD Code and contest the propriety of four of the six recommitment orders, as well as the order denying respondent's petition for a formal fitness hearing. In view of the alternative nature of relief sought by respondent on these appeals, we shall defer consideration of the challenged redeterminations of involuntary admission and, at this time, will proceed to resolve only the question of respondent's right to a readjudication of his fitness to stand trial.

## I

Based on the record of this case, we have determined that the immediate question to resolve concerns the issue of a current fitness hearing. Therefore, the threshold issue for resolution is whether the lower court's denial of the petition for such a hearing constituted an appealable order.

In Illinois, it is established law that the appealability of an order is to be determined by its substance as opposed to its form. (*Branch v. European Autohaus, Ltd.* (1981), 97 Ill. App. 3d 949, 951, 424 N.E.2d 6.) For a judgment to be appealable, "[i]t need not dispose of all the issues presented by the pleadings, but it must be final in the sense that it disposes of the rights of the parties, either upon the entire controversy or some definite part thereof." *People v. Nordstrom* (1966), 73 Ill. App. 2d 168, 176, 219 N.E.2d 151, *appeal dismissed*

---

[2]Section 1—119 of the MHDD Code prescribes the following requirements for involuntary commitment:

"(1) A person who is mentally ill and who because of his illness is reasonably expected to inflict serious physical harm upon himself or another in the near future; or

(2) A person who is mentally ill and who because of his illness is unable to provide for his basic physical needs so as to guard himself from serious harm." Ill. Rev. Stat. 1979, ch. 91½, par. 1—119.

(1967), 37 Ill. 2d 270.

■ It is our opinion that availability of appellate review exists where an individual such as respondent, who is faced with indefinite, involuntary civil commitment, has been denied a current readjudication of his fitness to stand trial. Although the lower court's ruling here was in no way terminative of the entire case on its merits, the fact remains that once such a ruling was made, respondent was entitled to determine if the court had, in fact, erred. The instant order was dispositive of a definite and separate part of the controversy; indeed, the only manner in which respondent's rights in this regard could have been vindicated or protected was through the appeal process. (See *People v. Ealy* (1977), 49 Ill. App. 3d 922, 936-37, 365 N.E.2d 149.) Because of the unusual nature of this case, we refuse to sanction any technical niceties involving jurisdiction in favor of attempting to move the case along the judicial path of resolution. We therefore reject the State's jurisdictional challenge.

## II

Respondent argues that the term "mental illness," as used in section 1—119 of the MHDD Code, is unconstitutionally vague. Our supreme court, however, has repeatedly emphasized that nonjurisdictional issues which have not been properly presented at trial or in post-trial motions are not adequately preserved for review and, thus, cannot be considered on appeal. (*People v. Lykins* (1979), 77 Ill. 2d 35, 38, 394 N.E.2d 1182, *cert. denied* (1980), 445 U.S. 952, 63 L. Ed. 2d 787, 100 S. Ct. 1602; *People v. Amerman* (1971), 50 Ill. 2d 196, 197, 279 N.E.2d 353.) As for questions of constitutional dimension, "[i]t is fundamental that the question of the constitutionality of a statute cannot be properly raised for the first time in a court of review, but must have been presented to the trial court and ruled upon by it, and the person challenging its validity must have preserved proper exceptions to such ruling." *People v. Brand* (1953), 415 Ill. 329, 337, 114 N.E.2d 370, *cert. denied* (1954), 347 U.S. 959, 98 L. Ed. 1103, 74 S. Ct. 709; see also *People v. Myers* (1981), 85 Ill. 2d 281, 290-91, 426 N.E.2d 535.

■ Regarding the case at bar, the constitutional propriety of the term "mental illness" as used in section 1—119 of the MHDD Code was neither raised in, nor ruled upon by, the trial court during the several hearings on involuntary commitment and recommitment. Moreover, no reason has been advanced as to why respondent failed to plead this issue during any stage of the proceedings below. Since a challenge to the constitutional validity of a legislative enactment

cannot be raised for the first time on appeal, we consider respondent's argument with regard to this matter as having been waived for purposes of review.

### III

It is respondent's contention that the trial court erroneously denied his petition for a formal hearing into his fitness to stand trial for the 1971 murder charge. We agree.

### A

The sole purpose of a civil commitment hearing in Illinois is to determine whether a person requires mental treatment or hospitalization. (*People v. Patterson* (1977), 54 Ill. App. 3d 931, 935, 370 N.E.2d 819, *appeal denied* (1978), 71 Ill. 2d 600.) "The outcome of such a hearing does not necessarily indicate whether an individual possesses the mental capacity to stand trial on criminal charges." *People v. Chambers* (1976), 36 Ill. App. 3d 838, 843, 345 N.E.2d 119; see also *People v. Patterson* (1977), 54 Ill. App. 3d 931, 935.

■ On the other hand, the issue of fitness for trial involves an accused's ability to function within the context of a legal proceeding, *i.e.*, understanding the nature and purpose of the proceedings against him and being able to assist in his defense (Ill. Rev. Stat. 1983, ch. 38, par. 104—10); it does not refer to psychiatric capacity in other areas. A defendant may have a physical or mental problem, or a combination of both, yet he may actually meet the fitness standards. (*People v. Kessler* (1983), 113 Ill. App. 3d 354, 357, 447 N.E.2d 495, *appeal denied*, (1983), 96 Ill. 2d 546.) Consequently, "[a] person may be fit to stand trial, although upon other subjects his mind may be unsound or deranged." (*People v. Lang* (1979), 76 Ill. 2d 311, 327, citing *Withers v. People* (1961), 23 Ill. 2d 131, 177 N.E.2d 203.) And although he may have certain organic physical problems, he still may meet the fitness requirements.

■ Regarding the case at bar, the most recent determination of respondent's fitness for trial was made on March 23, 1981. At that time, the trial court indicated that there was not a substantial probability that respondent would attain fitness within *one* year. As of April 25, 1984, when the public defender petitioned for the impanelment of a jury to inquire into respondent's fitness, over *three* years had passed since the previous adjudication. In view of the principles of law cited above, none of the civil commitment hearings held between May 1981 and April 1984 adequately substituted for a formal hearing into respondent's fitness to stand trial for the 1971

murder charge. We are therefore of the opinion that for the reasons set forth herein, the lower court's refusal to conduct such a hearing was improper.

In support of a contrary conclusion, the State argues that since it has not yet reinstated the 1971 charge, respondent is a "former defendant" under section 104—23(b)(3) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 104—23(b)(3)). As a result of this status, it is contended that the lower court properly recognized that respondent was not entitled to a formal fitness hearing. This contention must fail.

■■ First, we note that section 104—23(b)(3) is devoid of any language concerning hearings into an individual's fitness to stand trial. Rather, the provision merely states that upon commitment to the Department, "[a] former defendant *** shall be treated in the same manner as any other civilly committed patient for all purposes including admission, selection of the place of treatment and the treatment modalities, entitlement to rights and privileges, transfer, and discharge." Respondent, without a doubt, is a former defendant in the sense that his 1971 criminal charge has been dismissed with leave to reinstate. However, we simply cannot agree with, nor are we able to find any support for, the proposition that such a status necessarily precludes respondent's entitlement to a formal fitness inquiry during the dormancy of his criminal charge. To hold otherwise would, in our opinion, be tantamount to the fallacious assertion that a "former defendant['s]" entitlement to a fitness hearing is totally contingent on the State's decision to reinstate the prosecution of the dormant charge. We refuse to countenance such a capricious disposition of the fitness-adjudication issue. Under such a theory, defendant's status could be likened to riding a merry-go-round. Around, around, defendant goes, but where he stops nobody knows.

Second, it is settled law in Illinois that once a defendant has been adjudicated unfit to stand trial, a presumption of incompetence is raised and continues until it is rebutted by evidence that the accused understands the nature and purpose of the proceedings brought against him, and that he is able to assist counsel in his defense. (See *People v. Andson* (1979), 73 Ill. App. 3d 700, 705-06, 392 N.E.2d 358; *People v. Gravot* (1974), 19 Ill. App. 3d 486, 490, 311 N.E.2d 699.) In *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845, the Supreme Court limited the ability of a State to hold an accused, who is found unfit to stand trial, in the mental illness or penal facilities of the State indefinitely:

"[A] person charged by a State with a criminal offense who is

committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Jackson v. Indiana* (1972), 406 U.S. 715, 738, 32 L. Ed. 2d 435, 451, 92 S. Ct. 1845, 1858.

We are aware that approximately five months prior to respondent's commitment in August 1981 the trial court had, in fact, found that there was not a substantial probability that respondent would attain fitness within one year. Moreover, it is to be noted that under Illinois statutory law, a defendant's right to a speedy trial is held in abeyance during the continuance of his condition of unfitness for trial. (Ill. Rev. Stat. 1983, ch. 38, pars. 103—5(a), 104—23(c).) It is our opinion, however, that respondent is entitled to rebut the presumption of his incompetency that was raised, and has continued, since March 1981. We again stress that as of April 25, 1984, over three years had passed since the previous adjudication of respondent's unfitness. During this time period, it is uncontroverted that respondent has made definite progress toward becoming fit to stand trial. On August 24, 1983, following the sixth consecutive involuntary commitment hearing, the trial judge even acknowledged that: "I read the reports when they come in and I see that [respondent] has been making *substantial progress* in terms of *communication*." (Emphasis supplied.)

During the seventh consecutive involuntary commitment hearing held on April 24, 1984, it was the opinion of Dr. Robert Donoghue, a deaf psychologist who has been working with respondent since 1980, that respondent is "bright" and that "[h]e has been an excellent student when it comes to sign language. He picks up everything first try out." When asked if respondent was better able to communicate at the time of the seventh commitment hearing, as compared to the time Dr. Donoghue first began training him, the psychologist responded: "By a highly significant degree. No question at all about that." In essence, with respect to respondent's improvement at acquiring formal communicative skills, Dr. Donoghue indicated that: "I consider it a miracle the progress he has made in the last two years."

In view of the foregoing, we believe that it is now the time to re-examine respondent's condition so as to determine whether or not such progress has reached the point of fruition. We reach this determination particularly in light of the well-recognized fact that the results of civil commitment hearings, no matter how many in num-

ber, are not indicative of a person's mental capacity to stand trial on criminal charges. *People v. Patterson* (1977), 54 Ill. App. 3d 931, 935; *People v. Chambers* (1976), 36 Ill. App. 3d 838, 843.

We express no opinion regarding respondent's condition to stand trial. A realistic reading of the entire record suggests the necessity to separate respondent's physical condition (which includes problems of hearing, inability to talk, his recent alleged impairment of vision), his recent training, the record of the case, and his background (see Ill. Rev. Stat. 1983, ch. 38, par. 104—16), from matters pertaining to mental disability. The trial court, in 1981, found that respondent could reasonably be expected to inflict serious physical harm upon himself or another. Since that time, such finding has not changed. However, that does not mean that respondent is presently unfit to stand trial. And if found fit to stand trial, the present statutory scheme provides the appropriate action for such a person, whether he is found guilty or innocent. Ill. Rev. Stat. 1983, ch. 38, pars. 104—22, 104—26.

Section 104—23(b)(3) of the Code of Criminal Procedure of 1963 provides that upon commitment of a defendant to the Department, the court having jurisdiction over the criminal charge "shall dismiss the charges against the defendant, with the leave to reinstate." Without question, "[t]he striking of a charge with leave to reinstate does not discharge [a] defendant from the indictment or terminate the proceedings against him and prosecution of the charge may be reinstated on the State's motion." *People v. Rodgers* (1982), 106 Ill. App. 3d 741, 745, 435 N.E.2d 963, *appeal denied* (1982), 91 Ill. 2d 578, citing *People v. Bryant* (1951), 409 Ill. 467, 100 N.E.2d 598.

It is our conclusion, therefore, that respondent, handicapped as he is and facing indefinite, involuntary civil commitment, should be accorded a reasonable opportunity to obtain a trial in order that he may possibly clear his name and record of an alleged murder for which he was indicted over 14 years ago. By virtue of this opinion, the State shall take the necessary action to reinstate the 1971 charge against respondent in order that a fitness hearing may proceed.

## B

In view of our holding above, we also deem it appropriate to briefly address respondent's contention in his opening brief that the trial court should have dismissed the 1971 murder charge "with prejudice." We note that as respondent has conceded in his reply brief, *People v. Rink* (1983), 97 Ill. 2d 533, 455 N.E.2d 64, is dispositive of this issue. In *Rink*, the supreme court held that the dismissal of an

indictment within the meaning of section 104—28(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1980 Supp., ch. 38, par. 104—28(a))[3] is to be "with leave to reinstate." 97 Ill. 2d 533, 539-41.

## C

Furthermore, we find it necessary to dispose of respondent's contention that he has been denied the statutory right to a discharge hearing, often referred to as an "innocent only" hearing (*People v. Lang* (1979), 76 Ill. 2d 311, 329-30), as set forth in sections 104—23(a) and 104—25 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., 1980 Supp., ch. 38, pars. 104—23(a), 104—25). On January 24, 1972, the circuit court of Cook County entered a judgment of conviction on a jury verdict finding respondent guilty of murder as charged in the 1971 indictment. In its 1979 *Lang* decision, our supreme court held that: "Although the appellate court reversed the conviction as a violation of due process of law because of Lang's apparent unfitness, nonetheless, the trial afforded an opportunity to determine from the evidence whether or not he should be released as an innocent person." (76 Ill. 2d 311, 330.) It was the supreme court's conclusion, therefore, that the due process issue inherent in holding pending charges over indefinitely was *not* present in this case.

In essence, the Illinois Supreme Court has already determined that respondent's 1972 criminal trial did, in fact, provide him with the one "innocent only" hearing to which he was entitled. Since only the supreme court can overrule or modify its previous decisions (*Super Liquors, Inc. v. Illinois Liquor Control Com.* (1983), 113 Ill. App. 3d 229, 232, 446 N.E.2d 945, *appeal denied* (1983), 94 Ill. 2d 558), we reject respondent's assertion that the 1972 proceeding was not an adequate substitute for a discharge hearing.

---

[3]Section 104—28(a) provides that:
"Disposition of Defendants Found Unfit Prior to this Article. (a) Upon reviewing the report, the court shall determine whether the defendant has been in the custody of the Department of Mental Health and Developmental Disabilities for a period of time equal to the length of time that the defendant would have been required to serve, less good time, before becoming eligible for parole or mandatory supervised release had he been convicted of the most serious offense charged and had he received the maximum sentence therefor. *If the court so finds, it shall dismiss the charges against the defendant.*" (Emphasis added.) Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—28(a).

CONCLUSION

For the reasons set out herein, the order of the circuit court denying respondent's petition for a readjudication of his fitness is reversed, and the cause is remanded with directions that the court conduct a formal hearing into respondent's fitness to stand trial.

Reversed and remanded with directions.

STAMOS and O'CONNOR, JJ., concur.