394

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDDIE YOUNG, Defendant-Appellant.

First District (3rd Division)   Nos. 1—96—0680, 1—96—0681 cons.

Opinion filed March 31, 1997.

Rita A. Fry, Public Defender, of Chicago (Michael Davidson, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LEAVITT delivered the opinion of the court:

This appeal presents an issue concerning the interpretation of section 104—25(g)(2) of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/104—25(g)(2) (West 1994)). Section 104—25(g)(2) authorizes a trial judge, after finding a defendant is unfit to stand trial and "subject to involuntary admission under the Mental Health and Developmental Disabilities Code or constitutes a serious threat to public safety," to order the defendant involuntarily committed for treatment for a period "equal to the maximum sentence to which the defendant would have been subject had he *** been convicted in a criminal proceeding." 725 ILCS 5/104—25(g)(2) (West 1994). The defendant has been committed to the Department of Rehabilitation Services (DORS) pursuant to section 104—25(g)(2) upon a finding that he poses a serious threat to public safety.

This case has been before us previously, and we take judicial notice of the order entered in *People v. Young*, 281 Ill. App. 3d 1134 (1996) (unpublished order under Supreme Court Rule 23) (*Young I*). On May 29, 1992, the defendant, Eddie Young, was charged with the aggravated criminal sexual assault of a five-year-old girl. The defendant is a deaf-mute and does not know sign language or any other language that he can use to communicate effectively with counsel. In August 1992, after psychiatric and other evaluation, the trial judge found him unfit to stand trial pursuant to section 104—16(d) of the Code, not because he was mentally unfit, but due to his physical inability to communicate. The judge ordered him held in custody and that he receive tutoring in sign language. The judge also found, under section 104—16(d), that the defendant would likely be fit within one year.

After a later finding by the judge that the defendant was unlikely to become fit within one year, his lawyers moved for a discharge hearing pursuant to section 104—25 of the Code, which was conducted on December 15, 1994. After hearing testimony from the alleged victim of the sexual assault, as well as medical stipulations about the victim, the trial judge found under section 104—25(b) that the evidence established the defendant's guilt beyond a reasonable doubt. Because the defendant was accused of a Class X felony, the judge committed the defendant to the Department of Rehabilitation Services (DORS) and extended the term of the defendant's treatment an additional two years, as permitted by section 104—25(d)(1).

In *Young I*, we upheld the trial judge's factual determination

that the evidence showed that the defendant was guilty beyond a reasonable doubt for purposes of the Code. Briefly, the evidence showed that the defendant was the victim's aunt's boyfriend. The victim, who was five years old at the time of the alleged offense, testified that the defendant pulled her into his bedroom at her aunt's house, pushed her onto a bed and ripped off her shirt while brandishing a knife. He tied her arms and legs to the bed and placed a pornographic film into a video cassette recorder. He then proceeded to penetrate her with his hand and penis for an hour. Medical testimony established that the victim had suffered vaginal trauma consistent with sexual intercourse.

Since the original discharge hearing, the defendant has been in custody and receiving treatment pursuant to section 104—25(d)(1). The statutory two-year treatment period ordered by the judge under section 104—25(d)(1) has now expired, and pursuant to section 104—25(g), the defendant's case came before the trial judge again. At the time, the defendant had still not learned sign language sufficiently to enable him to communicate with counsel and understand the proceedings against him.

After hearing argument and considering the record in the case, including the evidence from the discharge hearing, the trial judge reiterated that the defendant was physically, but not mentally, unfit to stand trial. The judge also found the defendant capable of eventually learning sign language through proper tutoring. He then concluded, based on the evidence of the sexual assault, that the defendant "constitutes a serious threat to public safety" and remanded him to DORS for continued treatment until such time as he could understand sign language and be tried. Subsequently, the trial judge, having found pursuant to the authority granted him under section 104—17(c) that DORS was unable to provide the appropriate secure facility for the defendant, ordered the defendant placed in a secure facility operated by the Illinois Department of Mental Health and Developmental Disabilities, where DORS would continue to treat and rehabilitate him. The defendant is currently in custody at the Elgin Mental Health Center.

■ Section 104—25(g)(2) states, in pertinent part:

> "If the defendant continues to be unfit to stand trial, the court shall determine whether he *** is subject to involuntary admission under the Mental Health and Developmental Disabilities Code or constitutes a serious threat to public safety. If so found, the defendant shall be remanded to the Department of Mental Health and Developmental Disabilities or to the Department of Rehabilitation Services for further treatment and shall be treated

in the same manner as a civilly committed patient for all purposes *** for the period of commitment equal to the maximum sentence to which the defendant would have been subject had he or she been convicted in a criminal proceeding." 725 ILCS 5/104—25(g)(2) (West 1994).

The defendant contends that the trial judge erred in finding the defendant subject to commitment under section 104—25(g)(2) because the judge did not find that the threat he posed to public safety results from the condition that renders him unfit.

■ The defendant premises his argument on *People v. Lang*, 113 Ill. 2d 407 (1986), in which our supreme court addressed the standards for involuntary commitment under section 1—119 of the former Mental Health Code. See Ill. Rev. Stat. 1985, ch. 91¹/₂, par. 1—119 (now the Mental Health and Developmental Disabilities Code (MHDD Code), 405 ILCS 5/1—119 (West 1994)). That section provides that a person is subject to commitment if he "is mentally ill and *** because of his illness is reasonably expected to inflict serious physical harm upon himself or another in the near future." Ill. Rev. Stat. 1985, ch. 91¹/₂, par. 1—119. However, contrary to the defendant's assertion, an unfit person is not mentally ill under section 1—119 if, as here, " 'his unfitness is due to a solely physical condition.' " *Lang*, 113 Ill. 2d at 450, quoting *People v. Lang*, 76 Ill. 2d 311, 327, 391 N.E.2d 350 (1979). Here, the trial judge found, and the record supports, that the defendant's unfitness is due to a solely physical condition.

Although the opinion in *People v. Lang* does state that "[l]ack of fitness to stand trial is included within the broad definition of a 'mentally ill person' " (*Lang*, 113 Ill. 2d at 450), the court made that statement solely in reference to the standards under section 1—119. The defendant in *Lang*, though deaf-mute like the defendant here, had been independently determined by a trial court to be mentally unfit. Certainly, based upon the psychiatric testimony that the defendant is in contact with reality and exhibits no evidence of psychosis, effective disorder or intellectual deficit, he does not fall within the definition of mental illness as set forth in *Lang*. That definition is "an individual with an organic, mental or emotional disorder which substantially impairs the person's thought, perception of reality, emotional process, judgment, behavior, or ability to cope with the ordinary demands of life." *Lang*, 113 Ill. 2d at 453. Rather, in this case, the trial judge has specifically found that the defendant is not mentally ill. The defendant does not challenge this finding. Therefore, the standards for commitment in section 1—119, as reflected in *Lang*, are inapposite to the defendant's case.

■ The standard applicable in this case is established by the plain language of section 104—25(g)(2), which is cast in the disjunctive: if the defendant is unfit, the trial judge shall determine if he is subject to admission under the MHDD Code "or constitutes a serious threat to the public safety." 725 ILCS 5/104—25(g)(2) (West 1994). The defendant is clearly not subject to commitment under the MHDD Code. Because the commitment provisions of the MHDD Code apply only to mentally ill people and because a mentally ill person is already subject to commitment under section 1—119 of the MHDD Code if his condition renders him dangerous, we conclude that the portion of the sentence after the word "or" must refer to circumstances in which a person is unfit, but for reasons of physical and not mental disability, a distinct condition provided for in section 104—10 and elsewhere in the Code.

In these cases, section ʻ104—25(g)(2) directs the court to determine simply if the unfit defendant constitutes a serious threat to public safety. The statute does not limit the trial judge's consideration to whether the danger results from the condition that renders the defendant unfit. Here, the defendant is unfit because he is physically unable to communicate with counsel. He is, based upon the evidence that he allegedly brandished a knife while sexually assaulting a five year old, a serious threat to public safety. This is all section 104—25(g)(2) requires for him to be involuntarily committed up to the maximum sentence pending further fitness hearings.

For the foregoing reasons, the orders of the circuit court are affirmed.

Affirmed.

COUSINS, P.J., and CAHILL, J., concur.