392 So.2d 641 (1980)
STATE of Louisiana
v.
James WILLIAMS.
No. 65199.
Supreme Court of Louisiana.
May 19, 1980.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-relator.
Dwight M. Doskey, Orleans Indigent Defender Program, New Orleans, for defendant-respondent.
MARCUS, Justice.[*]
James Williams, a deaf mute, was indicted for the June 14, 1975 aggravated rape of a seventy-four year old woman. Because defendant was unable to communicate, he entered a plea of not guilty "through his mother and sister."
Thereafter, examinations and evaluations were made of and treatment rendered to defendant through the joint efforts of the prosecution and defense. In December 1977, defendant moved to dismiss the proceeding or have defendant committed "civilly." After a hearing, the trial judge denied the motion. Upon defendant's application, we granted certiorari to review the correctness of this ruling. On October 9, *642 1978, this court handed down a decision in which we remanded the case to the trial court for additional inquiry into defendant's mental condition and the possibility of treatment to improve his ability to communicate provided it could be accomplished without delay. "Otherwise," we stated, "the State must release Williams." State v. Williams, 363 So.2d 441 (La.1978).
On remand, the trial court ordered a mental examination for defendant and received a report from Dr. William C. Super, a psychiatrist, that he was unable to communicate with defendant and that some degree of mental retardation was involved. The court then ordered the district attorney to comply with the remainder of this court's order, i. e., either move to civilly commit defendant or dismiss charges by May 4, 1979. The district attorney filed a petition for civil commitment under the provision of La.R.S. 28:54 which provides in pertinent part:
A. Any person of legal age may file with the court a petition which asserts his belief that a person is mentally ill or is suffering from substance abuse and that the person is a danger to himself or others or is gravely disabled and may thereby request a hearing. The petition may be filed in the judicial district in which the respondent is confined, or if not confined, in the judicial district where he resides or may be found. The hearing shall not be transferred to another district except for good cause shown. A petitioner who is unable to afford an attorney may seek the assistance of any Legal Aid Society or similar agency if available.
. . . . .
D. As soon as practical after the filing of the petition, the court shall review the petition and supporting documents, and determine whether there exists probable cause that the respondent is mentally ill or suffering from substance abuse and that he is a danger to himself or others or is gravely disabled. If the court determines that probable cause exists, the court may appoint the respondent's treating physician if available, or if none, then another physician, preferably a psychiatrist, to examine respondent and make a written report to the court and respondent's attorney on the form provided by the office of mental health of the Department of Health and Human Resources. This report shall set forth specifically the objective factors leading to the conclusion that the person has a mental illness or suffers from substance abuse, the actions or statements by the person leading to the conclusion that the person is dangerous to himself or others or is gravely disabled and in need of immediate treatment as a result of such illness or abuse and why involuntary confinement and treatment are indicated. The following criteria should be considered by the physician:
(1) The respondent is suffering from serious mental illness or substance abuse.
(2) The respondent's condition is likely to deteriorate needlessly unless the respondent is provided appropriate medical treatment.
(3) The respondent's condition is likely to improve if he is provided appropriate medical treatment.
On July 5, 1979, a hearing in the Civil District Court for the Parish of Orleans was held to determine if defendant should be civilly committed under the standard provided in La.R.S. 28:55:
E. If the court finds by clear and convincing evidence that the respondent is dangerous to self or others or is gravely disabled, as a result of substance abuse or mental illness, it shall render a judgment for his commitment to a designated treatment facility which is medically suitable and least restrictive of his liberty....
Dr. Super testified at the civil commitment hearing. In response to the court's inquiry as to whether defendant had any medical disability or disability related to substance abuse, Dr. Super responded:
I found no evidence that he's suffering from any major mental disorder, that is, psychosis for example or severe organic brain syndrome which would severely impair *643 his ability to function.... His disability can be characterized primarily as a learning disability when it's a hearing and speech impediment and because of related to that there are no indications of mental deficiency, but the exact level of his intelligence is, of course, very difficult to arrive at, however, he's disabled through his hearing and speech difficulties.
On the basis of this testimony, the court maintained defendant's exception of no cause of action because the defendant had not been shown to have been "mentally ill" under the statute.
On July 16, 1979, the trial court ordered the state to release defendant. Upon the state's application, we granted certiorari to review this ruling.
The record reveals ample evidence of defendant's incompetency to stand trial and his inability to effectively assist counsel in his defense. In Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), the United States Supreme Court was also faced with a deaf mute who could not communicate with others. The Court stated:
We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal. 406 U.S. at 738, 92 S.Ct. at 1858.
In Jackson, the Court noted that defendant's commitment under Indiana law was not founded upon any requirement of dangerousness.
Thus, because defendant is unfit to stand trial, the state had the option of either confining him for a reasonable length of time to teach him to assist in his own defense or institute civil commitment proceedings. To be involuntarily committed under La.R.S. 28:54, one must be judicially determined to be "a person [who] is mentally ill or is suffering from substance abuse and... is a danger to himself or others or is gravely disabled ...." (Emphasis added.) La.R.S. 28:2(3) defines "dangerous to others":
"Dangerous to others" means the condition of a person whose behavior or significant threats support a reasonable expectation that there is a substantial risk that he will inflict physical harm upon another person in the near future.
If there is ample evidence that defendant committed the aggravated rape upon the seventy-four year old woman, there would be sufficient evidence that he is dangerous to others; in addition, to be civilly committed, defendant must be adjudged to be "mentally ill." It is this requirement that the civil district court found lacking.
Before the mental health law was completely revised in 1977, the judicial commitment statute (La.R.S. 28:53) required a different finding: "that the patient is suffering from a mental illness which causes him to be dangerous to himself or others ...." (Emphasis added.) The new statute does not require a finding of a mental illness causing a dangerous condition; it simply requires that a person be "mentally ill" and "dangerous." "Mentally ill" is a broad term encompassing many types of disorders. La.R.S. 28:2(14) broadly defines a "mentally ill person" as:
... any person with a psychiatric disorder which has substantial adverse effects on his ability to function and who requires care and treatment. It does not refer to a person suffering solely from mental retardation, epilepsy, alcoholism, or drug abuse.
If a person is found unfit to stand trial because of an inability to effectively communicate, he should be considered *644 "mentally ill" under La.R.S. 28:54 unless his unfitness is due solely to a physical condition. If that person also meets the dangerousness requirement of the statute, he should be considered subjectable to involuntary civil commitment. By a requirement of finding a defendant both mentally ill (because he is unfit to stand trial) and dangerous to himself or others, the possibility of committing an individual to a mental facility solely because he has been found unfit to stand trial is avoided.[1]
This approach is identical to that used by the Illinois Supreme Court in People v. Lang, 76 Ill.2d 311, 29 Ill.Dec. 87, 391 N.E.2d 350 (1979). As stated in Lang:
[This] interpretation ... complies with the dictates of Jackson v. Indiana. Under this construction Lang, if found to be dangerous, would not be held indefinitely as a person unfit to stand trial. His unfitness casts him into the class defined as mentally ill by the [statute], and if he also meets the dangerousness test, he would be committed in the same manner as one is involuntarily civilly committed. 29 Ill.Dec. at 93-94, 391 N.E.2d at 356.
The court civilly committed the defendant, a deaf mute charged with murder.
The Louisiana provisions provide numerous due process protections, including judicial review of any judicial commitment every one hundred and eighty days after commitment; reports from the director of the treatment facility provides the basis for this review and the reports must justify continued confinement. In addition, each patient must have his case reviewed at a hearing at least annually, though more frequent review is available. Finally, the director of treatment may convert the patient to "voluntary commitment" status or discharge him completely at his own discretion. La. R.S. 28:56(C). Rights of review and habeas corpus are also available.
We find the civil district court erred in finding defendant did not meet the "mentally ill" requirement under the civil commitment statute. The trial court erred in ordering defendant released based upon this erroneous finding. Accordingly, we must remand the case to the trial court with instructions to order the district attorney to reinstitute civil commitment proceedings in the Civil District Court for the Parish of Orleans in order to determine whether or not defendant is dangerous to himself or others. If he is found to be dangerous, he should be civilly committed.

DECREE
The order of the trial court dated July 16, 1979, ordering the state to release defendant is reversed and set aside and the case is remanded to the trial court for further proceedings consistent with this opinion.
DIXON, C. J., dissents with reasons.
CALOGERO, J., dissents with reasons.
DENNIS, J., dissents with reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The defendant in this case has been found not to be psychotic or suffering from any major medical disorder or severe organic brain syndrome. His learning disability is caused by his hearing and speech impairment. There are no indications of mental deficiency except, perhaps, a slight retardation.
The brief and rather cursory effort made by the state to teach the defendant to communicate was terminated prematurely. Nevertheless, there was an immediate indication that he was able to learn.
The record is rather convincing that the state could have, but has not, taught the defendant to communicate. The record does not contain any evidence that the defendant cannot be taught to communicate.
*645 For this court once more to remand the case to the criminal district court and once more order the district attorney to institute "civil commitment proceedings" in the civil district court is wholly ineffective. The civil district judge, in the earlier civil commitment proceedings, sustained an exception because the defendant had not been shown to have been mentally ill, a prerequisite under R.S. 28:55.
The majority now strains a new definition of "mentally ill" from the defendant's inability to communicate because of his speech and hearing impairment. This is in spite of the existence of an adequate, though seldom used, statutory provision for the care of persons like the defendant who, because of an infirmity, are incapable of taking care of themselves and their estates.
Article 422 of the Civil Code provides that: "Not only lunatics and idiots are liable to be interdicted, but likewise all persons who, owing to any infirmity, are incapable of taking care of their persons and administering their estates." The jurisprudence of this state has recognized that, since mental infirmities vary greatly in nature and degree, each interdiction must depend on its particular facts. But in each case three prerequisites are necessary to the pronouncement of a judgment of interdiction: (1) incapacity to administer one's estate; (2) inability to care for one's person; and (3) an actual necessity for the interdiction. In the Matter of the Interdiction of Fabre, 371 So.2d 1322 (La.1979); In re Interdiction of Adams, 209 So.2d 363 (4th Cir. 1968); Doll v. Doll, 156 So.2d 275 (4th Cir. 1963); In re Corbin, 187 La. 968, 175 So. 636 (1937); Landry v. Landry, 171 La. 280, 130 So. 866 (1930).
In the case of Succession of Lanata, 205 La. 915, 18 So.2d 500 (1944), it was determined that the language in C.C. 422 is traceable no further back than to the Louisiana Civil Code of 1808, wherein it was provided, under article 29, that: "Not only lunatics and idiots are liable to be interdicted; but likewise all persons, who, owing to certain infirmities, are incapable of administering their persons and their estates, as is the case with those who are deaf and dumb." The court in Lanata noted that although the last clause was merely illustrative, it indicated that under the former law of this state "certain infirmities" would encompass physical disabilities.
Therefore, if the three prerequisites for interdiction are met then this is a proper case for interdiction under C.C. 422. Defendant cannot communicate through any form of communication with the exception of primitive gestures and grunts. He cannot speak or hear, read or write, use sign language or read lips. In Dr. Super's letter to Judge Shea, following his attempt at examining the defendant, he stated that the defendant is totally unable to communicate, and that this fact led him to believe that some degree of mental retardation is involved. Because the defendant cannot communicate with others in any way, it is clear that he lacks the capacity to administer his estate. For the same reason, the defendant might not have the ability to care for his person. In determining whether a person is capable of taking care of his person, this court has held that:
"... An adult woman whose capacity is limited to the mere dressing and undressing of herself, to making up beds and sweeping floors, is not, in legal intendment, such a person as may be held capable of caring for her person. That the inmates of insane asylums perform acts of that character daily is of such common knowledge that the court may take judicial notice of the fact." Landry v. Landry, 171 La. 280, 284, 130 So. 866, 867.
There is also an actual necessity for interdiction in this case. Custodial care might be the only way his condition can be improved, and removal from a prison environment might speed the process.
Civil Code article 417 provides for the custody of an interdict:
"According to the symptoms of the disease, under which the person interdicted labors, and according to the amount of his estate, the judge may order that the interdicted person be attended in his own house, or that he be placed in a bettering *646 house, or indeed if he be so deranged as to be dangerous, he may order him to be confined in safe custody."
Therefore, the only alternative to the release of the defendant, which was properly ordered by the district judge, under the circumstances, is interdiction in the civil district court.
CALOGERO, Justice, dissenting.
I dissent. The state failed to prove that defendant was suffering from a "mental illness." R.S. 28:55 E. At most the state made out a case that defendant should be interdicted pursuant to La. Civ. Code art. 422.
NOTES
[*] The Honorable Edward A. de la Houssaye III participated in this decision as an Associate Justice Ad Hoc.
[1] Such commitment would also comply with O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), which held that a finding of mental illness alone is not sufficient for involuntary commitment; additional findings of dangerousness to self or others or incapacity for survival outside an institution are essential.