471 So.2d 954 (1985)
STATE of Louisiana, Plaintiff-Respondent,
v.
Arthur W. SMITH, Defendant-Applicant.
No. 17116-KW.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
*955 Ford E. Stinson, Jr., Indigent Defender Bd., Benton, for defendant-applicant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry N. Brown, Jr., Dist. Atty., Bobby L. Stromile, Asst. Dist. Atty., Benton, for plaintiff-respondent.
Before HALL, MARVIN and NORRIS, JJ.
NORRIS, Judge.
We granted defendant's writ application to consider the correctness of the trial court's finding that he is competent to stand trial. The issue here is somewhat unique since it is virtually conceded that defendant, because he is a deaf-mute and unable to speak or otherwise effectively communicate, lacks the capacity or ability to assist in his defense. However, because defendant's incapacity results from mild retardation and a physical defect rather than a mental disease or defect, the trial judge concluded that defendant was not among those persons afforded the protection of LSA-C.Cr.P. art. 641, et seq., and ordered him to proceed to trial. Finding merit in defendant's application, we reverse and remand.
Defendant, 33 years of age, was arrested on November 16, 1983, and charged with armed robbery in violation of LSA-R.S. 14:64. He has been confined in the Bossier Parish jail since his arrest. His original trial date of January 23, 1984, was delayed by defense motions for continuances and reset for April 23, 1984. On April 17, 1984, the trial court granted a defense motion to have defendant evaluated by Dr. Fred Tuton, a psychologist, to determine his ability to communicate with and assist counsel. This evaluation found defendant to be deaf, unable to speak words, and only able to communicate on a severely limited basis through crude sign language and pantomine. Dr. Tuton's detailed report indicated that defendant was functioning within the mild mentally retarded range with an estimated IQ between 66 and 72. Dr. Tuton administered to defendant a Wide Range Achievement Test and the results indicated that defendant has the reading vocabulary of a third grader and the arithmetic skills of a second grader.
Subsequent to this examination, defendant's trial was again continued and a sanity hearing was conducted on June 22, 1984, which resulted in a finding that defendant was unable to assist counsel in the defense of his case. The court ordered defendant committed to the Department of Health and Human Resources at the Feliciana Forensic Facility for evaluation or treatment until such time as he was found capable of standing trial. The lower court further ordered that a determination be made as to whether there was a treatment facility available to assist defendant in learning sign language communication to help him "understand these proceedings."
Defendant was never transferred to the Feliciana Forensic Facility because the facility refused to accept him. He remained in the Bossier Parish jail and was evaluated by Dr. Marouner, a psychiatrist with the Department of Health and Human Resources. On December 11, 1984, another sanity hearing was held and the reports of *956 Dr. Tuton, Dr. Michael Ellis and Dr. Marouner, along with Dr. Marouner's testimony, were offered into evidence. All three doctors agreed that defendant did not suffer from a mental illness. Dr. Tuton's report painstakingly considered the criteria set forth in State v. Bennett, 345 So.2d 1129 (La.1977), and voiced the opinion that defendant was not fully aware of the nature of the proceedings against him and could not assist in his defense. Dr. Ellis, a pathologist, examined defendant on only one occasion and in a one-page letter admitted it would be most difficult for defendant to communicate with his attorney but felt his defense could be prepared through a sign language interpreter with "much patience." Ellis further concluded after "asking several questions and receiving answers through Frank Russell," a person defendant indicated could talk sign language with him, that defendant "is of sound mind, can determine right from wrong, and ... has [not] performed acts due to insanity." Dr. Marouner testified he considered defendant to be without mental illness and able to understand the proceedings against him but felt defendant would be at a "gross disadvantage" to assist in his defense because of his inability to communicate. Dr. Marouner further testified there was a tremendous blockage in communication in his attempts to communicate with the defendant.
After considering the evidence, the trial judge, who had expended substantial effort to deal effectively with defendant's problem, stated he recognized that defendant was unable to effectively communicate or assist counsel in his defense. However, the trial judge felt that the literal wording of article 641 made it applicable only to a person whose inability to assist in his defense results from a mental illness or defect. Thus, in the instant case, because there was a lack of evidence of mental illness, article 641 did not apply to defendant. Therefore, the trial judge ordered defendant to proceed to trial. Defendant's contention before us is that the lower court erred in finding him competent to stand trial.
LSA-C.Cr.P. art. 641 provides:
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.
It is fundamental that a defendant whose mental condition is such that he lacks the capacity to understand the proceedings against him or to assist counsel in preparing a defense may not be subjected to trial. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); LSA-C. Cr.P. art. 641; State v. Bennett, supra.
The twofold test of capacity to stand trial under article 641 is: (1) whether the accused fully understands the consequences of the proceedings; and (2) whether he has the ability to assist in his defense by consultation with counsel. Drope v. Missouri, supra; State v. Weber, 364 So.2d 952 (La.1978). A defendant can be incapacitated in this sense even though free of psychosis, oriented as to time and place and aware of his surroundings. State v. Bennett, supra; State v. Williams, 381 So.2d 439 (La.1980). Mental retardation or subnormal intelligence is not in itself proof of incapacity. State v. Lawrence, 368 So.2d 699 (La.1979); State v. Morris, 340 So.2d 195 (La.1976). However, when below average mental ability combines with a physical handicap to prevent a defendant from assisting his counsel in his defense, a fair trial cannot proceed. State v. Williams, supra. The decision as to a defendant's competence to stand trial should not turn solely upon whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case, and the gravity of the decisions which he faces. State v. Narcisse, 426 So.2d 118 (La.1983).
Various criteria which should be considered in evaluating a defendant's capacity to stand trial were articulated in State v. Bennett, supra:

*957 Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial. 345 So.2d at 1138 [Citations omitted.]
The above stated factors need not be explained in depth by the members appointed to the Sanity Commission. Rather, these are guidelines to assist courts in determining whether or not the defendant is presently capable of standing trial. State v. Narcisse, supra.
The defendant carries the burden of proving by a preponderance of the evidence that he lacks the capacity to understand the proceedings against him or to assist in his defense. State v. Rogers, 419 So.2d 840 (La.1982).
In the instant case the evidence conflicts as to whether the defendant has the capacity to understand the nature of the proceedings against him. Drs. Ellis and Marouner opined that he has that capacity. Dr. Tuton is of the opinion he does not and the extent and completeness of Dr. Tuton's explanation is admittedly persuasive. However, the evidence preponderates, as the trial judge acknowledged, that defendant, because of his inability to effectively communicate, is presently unable to assist counsel in his defense. In State v. Williams, supra, a defendant charged with simple burglary was mildly to moderately retarded, had a limited education and was afflicted with a speech impediment which made communication difficult. The lower court found defendant able to understand the proceedings against him and assist counsel in his defense. The Louisiana Supreme Court reversed stating:
... The defendant is mildly to moderately retarded and has a speech handicap which makes communication difficult. This handicap disables him both in advising counsel of facts pertinent to his defense and in testifying ... 381 So.2d at 440 [Emphasis supplied.]
The Williams rationale is equally applicable here. Arthur Smith is unable to communicate with counsel as to facts pertinent to his defense and is unable to testify. He is charged with a serious felony offense which is punishable by a maximum sentence of 99 years at hard labor without benefit of parole, probation or suspension of sentence. Certainly, his inability to effectively communicate will significantly hamper the crucial decisions he will face at a trial. It would be illogical, discriminatory, and a deprivation of his due process right to a fair trial to force defendant to stand trial when he is unable to assist in his defense because of his physical disability and not force him to do so if he suffered from a mental disease or illness. The result of the incapacity, whether physical or mental, has the same effect. It deprives defendant of a fair trial because he is incapable of assisting in his defense. In State v. Williams, 363 So.2d 441 (La.1978); after remand, 392 So.2d 641 (La.1980), a deaf-mute, not suffering from a mental illness, but unable to communicate except with his family by primitive gestures, was *958 declared incompetent to stand trial and the Supreme Court said the alternatives available to the state were (1) confine him for treatment for a reasonable length of time to teach him to assist in his own defense; or (2) institute civil commitment proceedings.
We therefore conclude that the lower court erred in finding that this defendant, admittedly incapable of assisting in preparing and conducting his defense, could be subjected to trial. A person who, because of a physical condition, defect or disability, clearly lacks the capacity to consult with counsel, and to assist in preparing and conducting his defense, may not be subjected to trial. In such a situation as exists here, the state's options are: (1) to confine defendant for a reasonable length of time to teach him to assist in his own defense provided that the state can without delay demonstrate that meaningful training is available and will be provided; (2) to institute civil commitment proceedings against him in accordance with LSA-R.S. 28:54, et seq., as was explained in State v. Williams, 392 So.2d 641 (La.1980); (3) to institute interdiction proceedings in accordance with La.C.C. art. 422, as pointed out by the dissenting justices in State v. Williams, supra at 644; or (4) to release the defendant.
For the reasons assigned, the lower court's ruling ordering defendant to stand trial is reversed; this matter is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.