494 So.2d 230 (1986)
Steven HOLMES, Appellant,
v.
The STATE of Florida, Appellee.
No. 83-1055.
District Court of Appeal of Florida, Third District.
August 12, 1986.
*231 Bennett H. Brummer, Public Defender and Elliot H. Scherker, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Calianne P. Lantz, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and BASKIN and JORGENSON, JJ.
BASKIN, Judge.
Defendant Steven Holmes appeals a conviction and sentence entered upon a jury verdict finding him guilty of second-degree murder. Holding that the trial court abused its discretion by denying Holmes's motion for reevaluation of his competence to stand trial, we reverse and remand.
Holmes, a seventeen-year-old deaf-mute, was charged with second-degree murder, arising from an incident at Edison Middle School during which he stabbed and killed a teacher. Although Holmes was not a student at the time of the incident, he and another deaf-mute youth went to Edison to visit a girl they knew was a student at the school. Following a chase through the school corridors, teacher Francisco Walker apprehended Holmes outside the school. Walker grabbed Holmes from behind, around the upper body. Holmes reached back, stabbing Walker once in the upper chest. Holmes was arrested shortly thereafter and charged with second-degree murder. Pretrial competency proceedings were conducted and the trial court ruled Holmes competent to stand trial. Following trial, the jury returned a verdict finding Holmes guilty of second-degree murder as charged. The trial court entered a judgment of conviction and sentenced Holmes as a youthful offender to four years' incarceration followed by two years of community control.
During pretrial competency proceedings, the court heard testimony from five forensic mental-health experts and two experts in the psychology of the deaf. Three of the mental-health experts advised that Holmes was incompetent to stand trial, one found that Holmes was competent, and one reached a "weak conclusion" of competence.[1] The experts in the psychology of the deaf were divided in their opinions. Dr. John Scanlan determined that as a result of Holmes's extremely limited vocabulary, language skills, and fund of knowledge, Holmes would be incapable of understanding or participating in the legal proceedings. Based on these observations, Dr. Scanlon concluded that Holmes was incompetent to stand trial. The second expert in the psychology of the deaf, Dr. McCay Vernon, determined that Holmes possessed satisfactory communicative skills in American Sign Language and would be able to follow the legal proceedings if an interpreter familiar with the regional version of American Sign Language utilized by black deaf youths in the Miami area was used. He then concluded that Holmes was competent to stand trial. The trial court considered all the reports and testimony and ruled that Holmes was competent to stand trial. The case then proceeded to trial. During trial, Holmes's attorney requested reevaluation of defendant's competence, but the trial court denied the motion.
Due process requires that a defendant not be made to stand trial unless he has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Fla.R.Crim.P. 3.211(a). Florida Rule of Criminal Procedure 3.211(a)(1) sets forth factors to be considered in evaluating *232 a defendant's competence to stand trial.[2] A defect that impairs a defendant's comprehension or hampers his ability to consult with his counsel effectively, whether arising from physical or mental impairment, may lead to a finding of incompetence. People v. Jackson, 88 A.D.2d 604, 449 N.Y.S.2d 759 (1982); State v. Smith, 471 So.2d 954 (La. App. 1985). Thus, where a defendant is unable to understand and participate in the legal proceedings because of his inability to communicate, the state is precluded from subjecting him to a trial. See People v. Lang, 26 Ill. App.3d 648, 325 N.E.2d 305 (1975), appeal dismissed, 423 U.S. 1070, 96 S.Ct. 851, 47 L.Ed.2d 80, cert. denied, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 90 (1976); Smith; State v. Williams, 392 So.2d 641 (La. 1980); People v. Rivera, 125 Misc.2d 516, 480 N.Y.S.2d 426 (1984).
The trial court went to great lengths to determine Holmes's competence to stand trial. It considered the opinions of seven experts before concluding that Holmes was competent. We find no abuse of discretion in the trial court's determination up to this point in the proceedings. See Ferguson v. State, 417 So.2d 631 (Fla. 1982); Fowler v. State, 255 So.2d 513 (Fla. 1971) (where doctors' reports conflict, no abuse of discretion in finding defendant competent to stand trial). The trial court employed every possible precaution to assure that Holmes's due process rights were protected prior to the commencement of trial. See Reese v. Wainwright, 600 F.2d 1085 (5th Cir.), cert. denied, 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979). Nevertheless, subsequent events required additional action. Even when a defendant has been declared competent at the commencement of trial, the trial court must be alert to circumstances suggesting a change that would give rise to reasonable grounds to believe that the accused is unable to meet the standards of competence.[3]Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Lane v. State, 388 So.2d 1022 (Fla. 1980). Thus, if during trial the evidence raises a "bona fide and reasonable doubt" as to defendant's capacity, see Williams v. State, 396 So.2d 267 (Fla. 3d DCA), review denied, 407 So.2d 1107 (Fla. 1981), it is incumbent upon the trial court to conduct another competency proceeding.
In the case before us, Holmes admitted stabbing Walker, but asserted self-defense as one of his defenses. Defense counsel attempted to show that Holmes stabbed Walker because Walker held Holmes around the upper body, effectively cutting off Holmes's air supply, and that if Walker did not release Holmes, Holmes thought he would be injured or killed. When defense counsel attempted to question Holmes regarding his thoughts about what would happen if Walker had continued to exert pressure, Holmes was unable to respond. The transcript of the trial proceedings demonstrates Holmes's inability to communicate his reasons for stabbing Walker[4] and supports the trial judge's observation that *233 Holmes could not answer questions crucial to his defense.
Subsequently, defense counsel unsuccessfully sought to reopen the case to present psychological testimony directed to the issue of Holmes's ability to present the defense of self-defense. Holmes's difficulty in presenting his defense raised a bona fide and reasonable doubt as to his competence to stand trial. See State v. Williams, 392 So.2d 641, 643 (La. 1980); Kelly v. State, 96 Fla. 348, 118 So. 1 (Fla. 1928) (every defendant in criminal proceeding has right to testify on own behalf). Thus, events occurring during trial required the judge to conduct another competency hearing. See Smith, 471 So.2d at 957; cf. LaPuma v. State, 456 So.2d 933 (Fla. 3d DCA 1984) (where prior determination made that defendant competent to stand trial and no circumstances changed defendant's condition, not abuse of discretion for trial court to refuse to hold additional competency determination), review denied, 464 So.2d 555 (Fla. 1985). He declined to do so. Accordingly, we hold that the trial court abused its discretion in denying Holmes's motion. We therefore vacate the judgment and sentence entered below and remand for a reevaluation of Holmes's competence to stand trial.
We do not require the court to decide Holmes's competency at the time of the original trial; the difficulty of retrospectively determining an accused's competence to stand trial renders such a decision impractical. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); State v. W.S.L., 485 So.2d 421 (Fla. 1986). If Holmes is found competent, he may be retried. If, on the other hand, Holmes is ruled incompetent to stand trial, the state may proceed with the course outlined in Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). The state may hold Holmes for a reasonable time to determine "whether there is a substantial probability that he will attain capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." Jackson, 406 U.S. at 738, 92 S.Ct. at 1858, 32 L.Ed.2d at 451 (footnote omitted); see State v. Williams, 392 So.2d at 643.
The fact that Holmes is deaf and mute will not in itself prevent his trial, People v. Briggs, 46 Ill.2d 281, 263 N.E.2d 109, 113 (1970), as long as he is able to assist his counsel in presenting his defense. The expert witnesses agreed that Holmes has the potential to improve his communicative skills to the level necessary for understanding and assisting in the legal proceedings against him. The trial court must be assured that Holmes has met that potential before subjecting him to another trial.
Reversed and remanded with directions.
The transcript of the trial proceedings reveals the following questions and responses concerning Holmes's reasons for stabbing Walker:
BY MR. MC DONALD:
Q What did you do when he grabbed your neck?
THE INTERPRETER: When  w-h-e-n the boy grabbed neck, what did you do? What did you do when he grabbed  what did you do?
Okay. When the boy grabbed you, okay, what did you do?
You pushed him away, pushed him away.
You pushed him away and then you stabbed him?
He grabbed him twice. He pushed him away. And then, he pushed him away and stabbed him and ran.
BY MR. MC DONALD:
Q Did you think you were in danger, Stevie?
THE INTERPRETER: Were you afraid?
A No.
BY MR. MC DONALD:
Q Could you breathe?
THE INTERPRETER: Could  c-o-u-l-d  you breathe?

*234 A A little.
BY MR. MC DONALD:
Q The man had you by the throat. Could you breathe?
THE INTERPRETER: Okay. When the boy grabbed you, could you breathe? Okay. When the (sign) grabbed you, okay?
He say a little bit.
.....
BY MR. MC DONALD:
Q When you stabbed him, was he holding your neck?
THE INTERPRETER: When you stabbed the boy, was he holding your neck at the same time?
He said the same time.
.....
BY MR. MC DONALD:
Q Why did you stab him, Stevie?
THE INTERPRETER: Why did you stab? Why did you stab the boy, why?
.....
Because he was grabbing him.
.....
THE INTERPRETER: Was he hurting?
THE COURT: Ask him if he thought he was hurting him.
THE INTERPRETER: Did you think that the boy was hurting you? Was he hurting you? Was it hurt?
He said yes.
BY MR. MC DONALD:
Q What would happen to you if you did not stop him from doing this?
THE INTERPRETER: What would  what would  w-o-u-l-d happen if he did not stop choking you; what would happen?
He's describing the incident again.
.....
BY MR. MC DONALD:
Q Was there something you could do besides stab him?
THE INTERPRETER: Was there  t-h-e-r-e  there anything you could do to stop the boy from choking you?
He just said stab.
.....
THE INTERPRETER: Why did you stab the boy, why?
Because he was holding and grabbing him, so he stabbed him.
BY MR. MC DONALD:
Q If I hold you hard by the neck and hold you and hold you and hold you, what will happen to you?
THE INTERPRETER: If he holds you and holds you and holds you and holds you and holds you, what will happen?
He's describing the incident again.
.....
BY MR. MC DONALD:
Q Stevie, when the man was holding your throat, holding you hard, what would have happened to you if you did not stab him?
THE INTERPRETER: Would you say that slower?
BY MR. MC DONALD:
Q When the man was holding you hard by the throat, you were having trouble breathing. What 
THE INTERPRETER: Hard.
BY MR. MC DONALD:
Q  what would have happened to you 
THE INTERPRETER: What would have happened to you 
BY MR. MC DONALD:
Q  if you did not stab the man?
THE INTERPRETER: If you did not stab the boy?
His expression is: I don't know. Just his expression. It's not a sign, just an expression. Usually it for: I don't know.
.....
THE COURT: Well, I think he's answered the question as best he can. I think it's been asked many times before. I think the answer is always the same.
.....

*235 THE INTERPRETER: What would  w-o-u-l-d happen to you if the boy did not stop choking you; what would happen to you?
He gave  he describes the hard choking and pushed away again.
THE COURT: Okay. I don't think you're going to get an answer.
MR. MC DONALD: I wasn't going to 
THE COURT: We've tried every way we can.
.....
BY MR. MC DONALD:
Q When he had you by the throat, did it hurt?
THE INTERPRETER: When the (sign)  did it hurt? Did it hurt  h-u-r-t?
I'm going to spell it. Did it h-u-r-t  hurt you when the boy  did it hurt?
He nodded his head yes.
.....
BY MR. MC DONALD:
Q Stevie, if you don't breathe for a long time, a long, long time, what happens?
THE INTERPRETER: If you don't  (sign) long time, what happens? What happens if you don't breathe for a long, long time? What happens?
He just said long.
NOTES
[1] The experts all agreed that defendant did not suffer from a mental defect or illness and that his problems arose from his lack of communicative skills.
[2] Fla.R.Crim.P. 3.211(a) states in pertinent part:

(1) In considering the issue of competence to stand trial, the examining experts should consider and include in their report, but are not limited to, an analysis of the mental condition of the defendant as it affects each of the following factors:
(i) Defendant's appreciation of the charges;
(ii) Defendant's appreciation of the range and nature of the possible penalties;
(iii) Defendant's understanding of the adversary nature of the legal process;
(iv) Defendant's capacity to disclose to attorney pertinent facts surrounding the alleged offense;
(v) Defendant's ability to relate to attorney;
(vi) Defendant's ability to assist attorney in planning defense;
(vii) Defendant's capacity to realistically challenge prosecution witnesses;
(viii) Defendant's ability to manifest appropriate courtroom behavior;
(ix) Defendant's capacity to testify relevantly;
(x) Defendant's motivation to help himself in the legal process;
(xi) Defendant's capacity to cope with the stress of incarceration prior to trial.
[3] Fla.R.Crim.P. 3.210(b) requires the trial court to conduct a hearing "before or during trial" if reasonable ground exists to believe defendant not competent to stand trial.
[4] See appendix.